## WRONSKI v SUN OIL COMPANY

Docket No. 51523. Submitted April 9, 1981, at Lansing.—Decided July 28, 1981.

Walter F. Wronski, Eleanor J. Wronski, Eugene H. Koziara and Aniela Koziara owned parcels of developed property within the Columbus 3 field of 20-acre drilling units in St. Clair County established by the Supervisor of Wells for the Michigan Department of Natural Resources. Sun Oil Company requested that the Supervisor of Wells allow unitization of the Columbus 3 field to enable secondary recovery operations by pressure maintenance. Unitization is a process which permits an entire field to be operated as a single entity without regard to surface boundary lines. When a field is unitized the owners of property within the drilling range are awarded a royalty interest in the whole of what oil is produced. Subsequently, the supervisor found that Sun Oil had obtained the necessary approval of 75 percent of the owners of record within the area and thus approved the unitization plan. Thereafter, the Koziaras and the Wronskis filed separate claims of appeal. The appeals were consolidated for hearing. Subsequently, the plaintiffs commenced an action in St. Clair Circuit Court alleging that Sun Oil was overproducing the Columbus 3 field and converting oil in which they had a proprietary interest to its own use. The plaintiffs obtained a judgment which was affirmed in *Wronski v Sun Oil Co*, 89 Mich App 11; 279 NW2d 564 (1979), *lv den* 407 Mich 863 (1979). The plaintiffs petitioned the Supervisor of Wells to schedule a rehearing of the unitization order based upon Sun Oil's overproduction. The supervisor denied plaintiffs' petition on the basis that it was not timely and because the subject matter of the petition was covered in the plaintiffs' pending appeal from the initial unitization order. The plaintiffs filed a second petition for rehearing averring that Sun Oil had

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 38 Am Jur 2d, Gas and Oil § 148.
[3] 2 Am Jur 2d, Administrative Law §§ 192, 549.
[4] 1 Am Jur 2d, Administrative Law § 185.
[5] 2 Am Jur 2d, Administrative Law § 595 *et seq.*
[6] 20 Am Jur 2d, Courts § 67.

never obtained the 75 per cent approval needed from owners of the field. They also contended that Patrick Petroleum Company, which operated three wells in the field, also overproduced. The plaintiffs sought an end to the overproduction and reversal of the unitization order. Again, the supervisor denied the petition for lack of timeliness and further stated that the pending appeal was the proper vehicle for consideration of the issue raised. Thereafter, the plaintiffs amended the basis of their original appeal, charging that Sun Oil had no standing to petition for unitization of the Columbus 3 field and had arbitrarily determined the owners' participation percentages. This amended appeal also alleged that Sun Oil and Patrick Petroleum had overproduced the field. In addition, the plaintiff asserted that the Oil and Gas Advisory Board, which had recommended unitization, was biased. The amended appeal also averred that Patrick Petroleum had agreed to give one landowner a straight 25 per cent overriding royalty interest as a quid pro quo for his approval of the unitization plan. Three members of the board who had an interest in the Columbus 3 field did disqualify themselves. Sun Oil and Patrick Petroleum moved to dismiss the appeal because of delay and that due to an altered hydrocarbon and water configuration in the reservoir the interests of innocent property owners could not be protected if the unitization order was reversed. Subsequently, the plaintiffs moved to have the appeal transferred to the Ingham Circuit Court alleging that the Supervisor of Wells and the board were biased. Orders were thereafter entered, granting the defendants' motion to dismiss the appeal and denying the plaintiffs' motion to transfer. The plaintiffs then petitioned the Ingham Circuit Court for a review of the orders. Ray C. Hotchkiss, J., denied plaintiffs' petition. The plaintiffs appeal, alleging that 1) the hearing officer acting on behalf of the appeal board had no authority to dismiss the appeal based on the alleged delay and 2) even if the supervisor's appeal board had the power to dismiss proceedings based on a party's delay, this was not an appropriate case in which to grant dismissal, and 3) the circuit court erred in denying plaintiffs' request for review from the order of dismissal. *Held:*

1. The Supervisor of Wells Appeal Board does have the power to order dismisal despite the absence of any specific statutory authority and despite the fact that nothing in the Michigan unitization law gives the Supervisor of Wells or one acting under his authority the power to dismiss an appeal for delay.

2. The reasons given by the hearing examiner on behalf of the appeal board were sufficient to support the dismissal of the

appeal. The decision denying certification and transfer to the Ingham Circuit Court should be affirmed since the plaintiffs cite no statutory authority allowing such a procedure.

3. The administrative dismissal was fair since the appeal board had the power to act without injuring truly innocent parties. The circuit court does not labor under the same limitations on its power. In this case due to the paucity of findings the basis of the trial court's findings is not clear. The matter should be remanded to the circuit court. The plaintiffs' delay in pursuing the appeal is not a basis upon which the circuit court may decline to review the unitization order.

Affirmed in part, reversed in part and remanded with instructions.

1. GAS AND OIL — UNITIZATION LAW — SUPERVISOR OF WELLS.

There is no provision in the Michigan Unitization Law that gives the Supervisor of Wells or someone acting under his authority the power to dismiss an appeal for delay; however, the Supervisor of Wells Appeal Board does have the power to order dismissal (MCL 319.351 *et seq.;* MSA 13.139[101] *et seq.).*

2. GAS AND OIL — SUPERVISOR OF WELLS — ADMINISTRATIVE PROCEDURES ACT — STATUTES.

Proceedings before the Supervisor of Wells are to be conducted in accordance with the Administrative Procedures Act (MCL 319.379; MSA 13.139[129]).

3. ADMINISTRATIVE LAW — UNWARRANTED EXERCISE OF DISCRETION — STATUTES.

A decision and order by an administrative agency may be set aside where there has been an unwarranted exercise of discretion (MCL 24.306[1][e]; MSA 3.560[206][1][e]).

4. ADMINISTRATIVE LAW — CONSTITUTIONAL CHALLENGES.

Administrative boards are not empowered to consider constitutional challenges.

5. GAS AND OIL — UNITIZATION LAW — ADMINISTRATIVE REVIEW.

The Michigan Unitization Law is unlike most statutes providing for administrative review in that a litigant is not required to exhaust his administrative remedies as a prerequisite to seeking relief in the courts.

6. COURTS — TRIAL COURTS — FINDINGS OF FACT — JUDICIAL REVIEW — COURT RULES.

A trial court is required to make findings of fact and conclusions of law to facilitate judicial review (GCR 1963, 517.1).

*O'Sullivan, Beauchamp & Kelly,* for plaintiff.

*Loomis, Ewert, Ederer, Parsley, Davis & Gotting,* for Sun Oil Company.

*Emens, Hurd, Kegler & Ritter* (by *John C. Mc-Donald*), for Patrick Petroleum Company.

Before: CYNAR, P.J., and BRONSON and D. F. WALSH, JJ.

BRONSON, J. Plaintiffs appeal from the Ingham County Circuit Court's order denying review of two orders issued by the Supervisor of Wells and the Appeal Board.

On May 22, 1969, the Supervisor of Wells for the Michigan Department of Natural Resources (Supervisor) established 20-acre drilling units for the Columbus 3 field in St. Clair County. Plaintiffs owned parcels of developed property within the Columbus 3 field. On March 20, 1973, Sun Oil Company requested that the Columbus 3 field be unitized to enable secondary recovery operations by pressure maintenance. Unitization is a process which permits an entire field to be operated as a single entity without regard to surface boundary lines. When a field is unitized the owners of property within the drilling range are awarded a royalty interest in the whole of what is produced.

On June 20, 1973, the Supervisor issued a provisional order granting the unitization request. A permanent order was contingent upon Sun Oil's obtaining written approval of the unitization plan from at least 75% of the owners of record as required by MCL 319.357; MSA 13.139(107). On June 25, 1974, the Supervisor found that Sun Oil had obtained the necessary 75% owner approval and approved the unitization plan.

On June 29, 1974, plaintiffs Koziara appealed the June 25, 1974, order. On July 5, 1974, plaintiffs Wronski also filed a claim of appeal. The appeals were consolidated for hearing. Plaintiffs alleged that the royalty participation percentages were arbitrary, capricious, and unreasonable, that the order violated state and federal statutes prohibiting monopolies and restraint of trade, and that the statutory authorization for the unitization order as well as the order itself suffered from constitutional defects.[1] On January 17, 1975, the hearing examiner granted plaintiffs' request to hold the appeal in abeyance until discovery was completed.

In April, 1975, plaintiffs commenced an action in the St. Clair County Circuit Court, alleging that Sun Oil was overproducing the Columbus 3 field and converting oil in which they had a proprietary interest to its own use. Plaintiffs won a judgment which was affirmed in *Wronski v Sun Oil Co,* 89 Mich App 11; 279 NW2d 564 (1979), *lv den* 407 Mich 863 (1979). This opinion provides greater detail concerning the specifics of unitization.

On November 18, 1975, plaintiffs petitioned the Supervisor of Wells to schedule a rehearing of the unitization order based upon Sun Oil's overproduction of the Columbus 3 field. On December 17, 1975, the Supervisor denied plaintiffs' petition on the basis that it was not timely and because the subject matter of the petition was covered in plain-

---

[1] The particulars of the constitutional attack included allegations that: (1) the unitization order impaired the obligations of contracts, (2) the order constituted an unlawful taking of property rights without due process, (3) the order in effect constituted an unlawful condemnation of property since no showing of public necessity was made, (4) the unitization plan was discriminatory and constituted a denial of equal protection, and (5) MCL 319.357; MSA 13.139(107) itself is unconstitutional as depriving plaintiffs of valuable property rights without a trial by jury.

tiffs' pending appeal from the initial June 25, 1974, unitization order.

Plaintiffs filed a second petition for rehearing on April 7, 1976. This time they averred that Sun Oil had never obtained the 75% approval needed from owners of the field. They also contended that Patrick Petroleum Company, which operated three wells in the field, was also guilty of overproduction. Plaintiffs sought an end to the overproduction and reversal of the unitization order. Again, the Supervisor denied the petition for lack of timeliness and further stated that the pending appeal was the proper vehicle for consideration of the issue raised.

On June 22, 1977, plaintiffs amended the basis of their original appeal. The amended appeal charged that Sun Oil had no standing to petition for unitization of the Columbus 3 field and had arbitrarily determined the owners' participation percentages. This amended appeal also alleged that Sun Oil and Patrick Petroleum had overproduced the field. Plaintiffs also asserted for the first time during the proceedings that the Oil and Gas Advisory Board, which had recommended unitization, was biased. Additionally, the amended appeal averred that Patrick Petroleum had agreed to give one landowner a straight 25% overriding royalty interest as a quid pro quo for his approval of the unitization plan. Sun Oil and Patrick Petroleum denied all material allegations contained in the amended appeal.

On September 15, 1978, plaintiffs requested a hearing on their appeal at the earliest possible date. They also requested that certain members of the Oil and Gas Advisory Board disqualify themselves because of bias. Ultimately, three members of the board who had an interest in the Columbus 3 field did disqualify themselves.

On November 13, 1978, Sun Oil moved to dismiss the appeal because of delay. Patrick Petroleum did likewise on December 13, 1978. It was claimed that the operation of the field under the plan had resulted in an altered hydrocarbon and water configuration in the reservoir. Further, the oil producers alleged that, due to these changes, the interests of innocent property owners could not be protected if the unitization order was reversed.

On December 12, 1978, plaintiffs moved to have the appeal transferred to the Ingham County Circuit Court on the basis of bias on the part of the Supervisor of Wells and the Oil and Gas Advisory Board. After a prehearing conference held on December 14, 1978, a hearing examiner issued an opinion granting defendants' motion to dismiss the appeal. Thereafter, on January 3, 1979, the hearing examiner denied the plaintiffs' motion to transfer. Orders granting defendants' motion and denying plaintiffs' motion were also entered on this date.

On February 28, 1979, plaintiffs petitioned the Ingham County Circuit Court for a review of the orders. On January 30, 1980, the circuit court denied plaintiffs' petition. No written opinion was issued.

Plaintiffs initially assert that the hearing officer acting on behalf of the appeal board had no authority to dismiss the appeal based on the alleged delay. This is an issue of first impression in Michigan. We have been unable to locate any previous cases considering any aspect of the Michigan Unitization Law. MCL 319.351 *et seq.;* MSA 13.139(101) *et seq.* Preliminarily, we note that nothing in the Michigan Unitization Law gives the Supervisor of Wells or one acting under his authority the power to dismiss an appeal for delay.

By MCL 319.379; MSA 13.139(129) proceedings before the Supervisor of Wells are to be conducted in accordance with the Administrative Procedures Act (APA). MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.* This act provides that, "The parties in a contested case shall be given an opportunity for a hearing without undue delay", MCL 24.271(1); MSA 3.560(171). However, it provides no explicit authority for dismissal based upon a party's delay. Defendants nonetheless rely on this portion of the APA as extending to the Supervisor of Wells Appeal Board the right to dismiss actions based on a party's delay. We disagree that on the facts of this case MCL 24.271(1); MSA 3.560(171) authorizes dismissal. This record is devoid of any showing that defendants were denied a reasonably timely hearing. We do not dispute the fact of delay in this case. However, defendants have acquiesced in this delay. Not until plaintiffs actually sought a hearing on their appeal in September, 1978, did defendants ever express any concern about the interim delay. We cannot say that defendants were denied the opportunity for a hearing without undue delay because they never sought an opportunity to be heard.

Despite the foregoing, we conclude that the Supervisor of Wells Appeal Board does have the power to order dismissal despite the absence of any specific statutory authority.

In *Turner v General Motors Corp,* 70 Mich App 532; 246 NW2d 631 (1976), *modified on other grounds* 401 Mich 419; 258 NW2d 414 (1977), one panel of this Court held that the Workers' Compensation Appeal Board had the power to dismiss an appeal for failure to comply with the act despite the lack of explicit authorization in the statute. The *Turner* Court reasoned that a con-

trary decision would render the act meaningless because, without the power of dismissal, the appeal board could not successfully effectuate the Legislature's intent of providing quick relief for injured workers. *Id.,* 543-544.

Similar policy considerations are applicable in respect to the Michigan Unitization Law. It is clear that under this act, the Legislature was desirous of establishing an expedited appeal process. See MCL 319.381; MSA 13.139(131), MCL 319.382; MSA 13.139(132), and MCL 319.384; MSA 13.139(134). Without the power of dismissal, a party could circumvent the legislative intent.

Plaintiffs also claim, however, that even if the Supervisor of Wells Appeal Board has the power to dismiss proceedings based on a party's delay, this was not an appropriate case in which to grant dismissal.

MCL 24.306; MSA 3.560(206) sets forth the situations in which a decision by an administrative agency may be reversed or modified. By MCL 24.306(1)(e); MSA 3.560(206)(1)(e) an order may be set aside where there has been an "unwarranted exercise of discretion".

The hearing examiner gave two reasons for dismissing plaintiffs' appeal. First, he noted that the appeal board's authority was greatly circumscribed by MCL 319.385; MSA 13.139(135). By this provision the appeal board may only affirm or reverse a unitization order entered by the Supervisor of Wells. Consequently, the hearing examiner held that if plaintiffs' appeals were successful, defendants and innocent parties would be substantially harmed by the delay. Sun Oil Company had invested some $1,800,000 in the field over the four years it had operated under the unitization order. Furthermore, due to the water injection the co-

nfiguration of the hydrocarbons in the reservoir had changed. Therefore, Sun Oil and others having interests in the field could not be restored to anything like their preunitization positions.

The hearing examiner also dismissed the case because various constitutional questions had been raised. As he noted, administrative boards are not empowered to consider constitutional challenges. *Dation v Ford Motor Co,* 314 Mich 152, 159; 22 NW2d 252 (1946), *Golembiowski v Madison Heights Civil Service Comm,* 93 Mich App 137, 153; 286 NW2d 69 (1979), *lv den* 408 Mich 893 (1980).

We hold that the reasons given by the hearing examiner on behalf of the appeal board were sufficient to support the dismissal of the appeal. We also affirm the decision denying certification and transfer to the Ingham County Circuit Court for the reason that plaintiffs cite no statutory authority allowing such a procedure.

We thus come to the final issue which must be resolved, that is: did the circuit court err when it denied plaintiffs' request for review from the order of dismissal. MCL 319.386; MSA 13.139(136) provides:

"The action of the appeal board shall be final with respect to jurisdiction for an appeal before any regulatory agency of this state, but any person may seek relief in the courts as provided under the laws of the state, and the taking of an appeal as provided in this act shall not be a prerequisite to seeking relief in the courts. The place of initiation of proceedings for review shall be limited to the circuit court of the county of Ingham, which shall have exclusive jurisdiction of all suits brought against the supervisor, the board, or any agent or employee thereof, on account of any matter arising under the provisions of this act. No temporary restrain-

ing order or injunction shall be granted in any such suit except after due notice and for good cause shown."

This provision gives the circuit court the power to review the actions of the appeal board by way of appeal and to consider all suits originally instituted in the court "against the supervisor, the board, or any agent or employee thereof". The Michigan Unitization Law is unlike most statutes providing for administrative review in that a litigant is not required to exhaust his administrative remedies as a prerequisite to seeking relief in the courts. In this case, however, plaintiffs elected to pursue their administrative remedies. Thereafter, they sought review of the original unitization order in the circuit court and the taking of additional testimony on the issue of the proper participation percentages.

Defendants argue that the circuit court could do nothing except deny the request for review since plaintiffs sought the taking of additional evidence. By section 106(2) of the APA,[2] a circuit court may "affirm, reverse or modify the decision or order or remand the case for further proceedings". On review of an action from an administrative agency, the court has no power to take further evidence itself. Defendants contend that since MCL 24.305; MSA 3.560(205) provides that an administrative agency may "modify its findings, decision or order because of the additional evidence" no remand would be appropriate in this case as, pursuant to the Michigan Unitization Law, the appeal board could only affirm or reverse the unitization order and is not empowered to modify it. MCL 319.385; MSA 13.139(135). We accept that the appeal board's power to modify the unitization order is

---

[2] MCL 24.306(2); MSA 3.560(206)(2).

nonexistent. This does not mean, however, that a remand would be futile. The circuit court, if it found a need for additional testimony, could remand to the administrative agency for further evidence and retain jurisdiction, making its decision based on the broadened record. The circuit court does have the power to modify a unitization order.

At this time, plaintiffs have dropped all their claims for relief except the allegation that their participating percentages in the unitization are not fair vis-à-vis defendants.[3] We held above that because the appeal board could not adequately fashion relief which is fair to all parties, there was no unwarranted exercise of discretion in dismissing the appeal. However, in respect to the circuit court, there is sufficient power to fashion a remedy which is fair to all. As concerns the delay in this case, then, the equities change in respect to the administrative and judicial forums. The administrative dismissal was fair since the appeal board had no power to act without injuring truly innocent parties.[4] As noted above, the circuit court does not labor under the same limitations on its power. Furthermore, if not for the potential consequences to truly innocent persons, the hearing examiner's decision to dismiss would have been fundamentally unfair. After entering an order indicating that the appeal would be held in abeyance until plaintiffs were ready to proceed, it would be unjust to then dismiss the case solely due to delay where plain-

---

[3] Furthermore, plaintiffs are accepting prospective adjustment of the participating percentages only.

[4] Indeed, plaintiffs, themselves, state that to set aside the unitization order at this time "would be inappropriate since it could result in inequities to other landowners and since it would result in waste by the failure to maximize recovery of oil and liquid hydrocarbons from the Columbus '3' Oil and Gas Field."

tiffs were never warned of this possibility.[5] During the four years the appeal was pending, no effort was made by either the Supervisor, appeal board, or the defendants to speed the appellate process. Had defendants insisted on speedy appellate review, the equities would be different again.

Defendants state, however, that the appeal in this case was only to be held in abeyance pending the completion of discovery in the earlier *Wronski, supra,* and that discovery was completed there by April 4, 1977, if not before. Nonetheless, no request to proceed on the appeal was made until September 15, 1978. Again, however, defendants were equally cognizant of when discovery in the earlier *Wronski* was completed, yet made no request for the appeal to proceed. Furthermore, on the record at hand, it is clear that the appeal board would have had the same difficulty fashioning complete relief in April, 1977, as it did when it dismissed the appeal.

While plaintiffs' own questionable delay should rightly be construed as a bar to their ability to gain adjustments of their participation percentages vis-à-vis innocent persons, the same is not true in respect to these defendants. First, both defendants are also chargeable with the delay. Second, plaintiffs contend that the participation percentages defendants enjoy in relation to them are due to the fact that these percentages are in part based on defendants' illegal overproduction of oil in the Columbus 3 field. In *Wronski, supra,* this Court upheld a finding that Sun Oil Company had

---

[5] We also note that in November, 1975, the Supervisor of Wells denied plaintiffs' petition for rehearing based upon Sun Oil's overproduction partly because this matter was covered in the pending appeal. It strikes us as unfair that the Supervisor should dismiss the petition for rehearing based on the pending appeal and then later that the appeal board should dismiss this appeal due to delay unless some other forum for review is allowed.

illegally overproduced oil belonging to plaintiffs. All the parties agree that the unitization percentages are in large part based on oil production in the field during the fourth quarter of 1971. Plaintiffs contend that during this quarter defendants were overproducing their oil. If true, on the facts of this case, it would be inequitable not to give plaintiffs a real opportunity to establish that the royalty percentages they are entitled to should be increased and that defendants' royalties should be decreased.

The trial court merely entered an order stating, "Petition for review denied". GCR 1963, 517.1 requires a trial court to make findings of fact and conclusions of law. The purpose of this requirement is to facilitate judicial review. *Nicpon v Nicpon*, 9 Mich App 373, 378; 157 NW2d 464 (1968). In this case, due to the paucity of findings we do not know the basis of the circuit court's findings. We remand this matter to the circuit court. The court may again deny the petition for review, accept review, modify the unitization order or remand for further development of the record. However, by this opinion we hold that plaintiffs' delay in pursuing the appeal is not a basis upon which the circuit court may decline to review the unitization order. Any order entered by the circuit court should be accompanied by an opinion specifying the reasons for the action taken.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. No costs, questions of statutory construction being central to resolution of this case.