Edgar F. **DIETRICH** and Theresita Dietrich, Plaintiffs,

v.

**SUN EXPLORATION AND PRODUCTION COMPANY** and Sun Operating Limited Partnership, Defendants.

**No. 87–70451.**

United States District Court, E.D. Michigan, S.D.

Feb. 10, 1992.

Jack C. Chilingirian, St. Clair Shores, Mich., for plaintiffs.

Lynam & Associates by Terence V. Lynam, Lansing, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

This suit involves a royalty interest in tracts of land in the Columbus III oil field in St. Clair County, Michigan. The field is leased to and operated by defendants Sun Exploration Company and Sun Operating Limited Partnership. Plaintiffs Edgar J. and Theresita Dietrich filed their five-count amended complaint April 11, 1988. Count II of plaintiffs amended complaint has been dismissed. After numerous motions, including two by defendants for dismissal, defendants have now filed the instant motion for summary disposition [*sic*]. This court will treat the motion as a motion for summary judgment under Fed.R.Civ.P. 56.

### FACTS

On November 29, 1971, the owners of Tracts 1, 2 and 6 of the Columbus III oil field, Frank Koziara, Aniela Koziara and Eugene Koziara, assigned a 1/32 overriding royalty interest in Tract 6 and a 1/24 overriding royalty interest in Tracts 1 and 2 to the law firm of Dietrich & Shrauger, P.C.[1] On June 1, 1972, the law firm assigned its interest to Helen Spalter, the mother of plaintiff Edgar Dietrich, for life, remainder to Katherine Dietrich, Edgar Dietrich's daughter. Helen Spalter died on March 25, 1982. On June 1, 1984, the remainder person, Katherine Dietrich, reassigned her interest to plaintiffs.

In the mid–1970's, the Koziaras and the Wronskis, who also owned part of the Columbus III oil field, brought suit in St. Clair County Court to rescind their leases with Sun Oil Company, defendants' predecessor, or, in the alternative, for damages from Sun Oil's overproduction of oil from the pool beneath the Koziaras' and Wronskis' properties. At the time of the overproduction, the Michigan Supervisor of Wells had put a proration order in effect, which limited the production of oil from the pool.

The trial court, Judge Streeter, presiding, found that Sun Oil had intentionally and illegally overproduced oil from the field, and that 50,000 barrels of this oil had been illegally drained from the Wronskis' and the Koziaras' tracts. *Wronski v. Sun Oil*, Nos. 101–7 and 103–7 (St. Clair Cir.Ct. Dec. 21, 1976) ("Streeter Opinion"). The Michigan Court of Appeals affirmed this decision except as to the trial court's computation of damage. *Wronski v. Sun Oil Co.*, 89 Mich.App. 11, 279 N.W.2d 564 (1979), *leave denied*, 407 Mich. 863 (1979) ("*Wronski I*"). The Michigan Court of Appeals awarded damages as follows:

> The total damages awardable in this case is $251,000 based upon the conversion of 50,000 barrels of oil valued at $5.02 per barrel. Plaintiffs Koziara are entitled to $187,815.85 due to their ownership of 72.835% of the converted oil. Plaintiffs Wronski are entitled to $68,189.15 due to their ownership of 27.165% of the converted oil.

*Wronski*, 89 Mich.App. at 29 n. 10, 279 N.W.2d 564.

The Koziaras and the Wronskis filed another lawsuit against Sun Oil in 1975 in Ingham County Circuit Court seeking review of two orders issued by the Supervi-

---

1. In a previous transaction, defendants' predecessor had transferred part of its working interest back to the Koziaras. It is from this working interest regained by the Koziaras that plaintiffs hold their overriding royalty interest, not from the Koziaras' royalty interest held as a consequence of land ownership.

An "overriding royalty interest" has been defined as a fractional interest in the gross production of oil and gas under a lease, *in addition to* the usual royalties paid to the lessor, free of any exploration or production costs. *Meeker v. Ambassador Oil Co.*, 308 F.2d 875, 822 (10th Cir.1963), *rev'd on other grounds*, 375 U.S. 160, 84 S.Ct. 273, 11 L.Ed.2d 261 (1964). Only when oil and gas are reduced to possession does the interest attach. *Mulsow v. Gerber Energy Corp.*, 237 Kan. 58, 697 P.2d 1269, 1273 (1985).

sor of Wells and the Appeals Board. The Wronskis and the Koziaras were challenging the supervisor's decision to grant Sun Oil's request for unitization of the Columbus III field.

Unitization is a process which permits an entire field to be operated as a single entity without regard to surface boundary lines. When a field is unitized the owners of property within the drilling range are awarded a royalty interest in the whole of what is produced.

*Wronski v. Sun Oil Co.*, 108 Mich.App. 178, 181, 310 N.W.2d 321 (1981) (*"Wronski II"*).

The Circuit Court denied the Koziaras' and the Wronskis' request for review of the supervisor's decision, and the Michigan Court of Appeals affirmed. *Id.*

Neither plaintiff, nor their predecessors in interest, *i.e.*, Dietrich & Shrauger, P.C., Helen Spalter or Katherine Dietrich, were parties to either *Wronski I* or *Wronski II.* Further, in neither *Wronski I* nor *Wronski II* did the judge refer to plaintiffs' predecessors' overriding royalty interest.

Plaintiffs brought the present action in Wayne County Circuit Court. In their five-count complaint plaintiffs allege that defendants had illegally drained 36,417.5 barrels of oil from tracts 1, 2 and 6 as found by Judge Streeter in *Wronski I* (Count I)[2]; that defendants illegally overproduced oil from the field in addition to the overproduction found by Judge Streeter, in breach of an alleged fiduciary duty to plaintiffs (Count II); that defendants negligently or intentionally breached their duty to plaintiffs by failing to use the care and skill of an ordinary and prudent oil producer, including underreporting oil reserves, sabotaging the well by pouring cement into it and persuading geologists and other witnesses to give false testimony (Count III); that defendants fraudulently induced plaintiffs or their predecessors to sign the unitization agreement (Count IV); and that defendants failed to compensate the plaintiffs

for 881,071 barrels of oil allegedly produced by defendants (Count V).

Defendants removed the action to this court based on diversity. Plaintiffs subsequently amended their complaint. Further, Count II of the amended complaint was dismissed by the parties. Defendants have now filed the instant motion for summary judgment. Plaintiffs have filed a response and defendants have filed their reply.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." (Citation omitted.) *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the

---

**2.** The Michigan Court of Appeals in *Wronski I* found that 50,000 barrels of oil had been converted and that the Koziaras owned 72.835% of

the oil. *Wronski*, 89 Mich.App. at 29 n. 10, 279 N.W.2d 564. The 36,417.5 barrels pleaded by plaintiffs is 72.835% of 50,000 barrels.

burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

## ANALYSIS

The analysis of the defendants' motion for summary judgment will proceed according to the four remaining counts of the plaintiffs' complaint.

### A. Count I—Illegal Drainage & Failure to Compensate

■ Defendants claim that plaintiffs cannot prove that Sun Oil drained 36,417.5 barrels of oil from Tracts 1, 2 and 6. Defendants point to a lack of expert testimony and to the time and property interest discrepancies between *Wronski I* and the instant case. Plaintiffs state that expert testimony is not necessary to show defendants' wrongdoing and that *Wronski I* is sufficiently similar to the facts in this case to allow the use of offensive collateral estoppel. This court agrees that plaintiffs' experts and the expert testimony used in the Streeter Opinion are insufficient to establish defendants' alleged illegal drainage of oil from Tracts 1, 2 and 6. The use of *Wronski I* in this case is limited because of the time and property interest discrepancies.

Plaintiffs claim that defendants drained oil from Tracts 1, 2 and 6 of the Columbus III oil field. This has conclusively been established in *Wronski I,* and defendants cannot relitigate that issue. However, *Wronski I* merely establishes, for purposes of this case, that defendants are liable for illegal drainage of the Wronskis' and Koziaras' properties from the period February 1, 1970, to June 30, 1974. Plaintiffs have not held an interest in the oil for that entire period of time. Plaintiffs and their successors in interest have held the overriding royalty interests from November 1, 1971, to June 30, 1974. While 36,417.5 barrels were drained from the Koziaras' property during the 53–month period at issue in *Wronski I,* there is no indication of the amount of oil drained from the Koziaras' property during the 32–month period at issue here. As there might not have been a steady stream of oil drainage during that time, a simple mathematical percentage may not be appropriate. Plaintiffs' reliance on the Streeter Opinion is therefore misplaced. Expert testimony is needed to establish this data. As plaintiffs have not offered an expert to establish this point in the case, defendants must prevail on their motion for summary judgment on Count I.

### B. Count III—Intentional or Negligent Breach of Duty

■ In the instant case, defendants are oil and gas producers under an oil and gas lease with the Koziaras. Under Michigan law, an oil or gas producer has a duty to act as a reasonable and prudent oil producer in operating the field and in produc-

ing the oil or gas. *See Michigan Wis. Pipeline Co. v. Michigan Nat'l Bank*, 118 Mich.App. 74, 82–83, 84, 324 N.W.2d 541 (1982); *see also Compton v. Fisher-McCall, Inc.*, 298 Mich. 648, 653, 299 N.W. 750 (1941). Plaintiffs' claim in Count III revolves around the allegation that defendants have not acted as reasonable or prudent oil producers.

Plaintiffs assert that defendants negligently or intentionally breached their duty of care in interpreting gas and oil porosity, gas and oil net pay, oil-water contact and other geological and petroleum reservoir data. Plaintiffs also allege that defendants withheld information about the 6–3 well of the Columbus III oil field by underreporting the oil reserves contained in the well and that defendants sabotaged the well by pouring cement into it. Plaintiffs further allege that defendants provided geologists and other witnesses who were willing to give false testimony at the unitization hearing. Plaintiffs have offered the affidavit and report of Dr. M.Y. Joshi, a petroleum engineer to prove the existence of a genuine issue of material fact in order to avoid defendants' motion for summary judgment.

Defendants have offered the Proposal for Decision, *Koziara v. Sun Oil Co.* (Mich. Dep't Nat. Resources May 25, 1988) (Fulkerson, A.L.J.) ("Fulkerson Proposal") and the Order of the Supervisor of Wells, *Koziara v. Sun Oil Co.*, No. (A) 1–5–73 REMAND (Mich. Dep't Nat. Resources March 22, 1989) ("Order of the Supervisor"), *aff'd sub nom. Wronski v. Sun Exploration and Prod. Co.*, No. 79–22915–AA (Ingham Cir.Ct. June 12, 1991) (Stell, J.). The Order of the Supervisor adopted the Fulkerson Proposal as the opinion of the supervisor. Plaintiffs were notified of, attended and participated in these hearings.[3] Michigan recognizes the *res judicata* effect of administrative proceedings. *Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n. 3, 429 N.W.2d 169 (1988); *Harris v. Harlan Elec. Constr. Co.*, 101 Mich.App. 155, 159, 300 N.W.2d 479 (1980); *see also United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). Because the Order of the Supervisor has been affirmed by Judge Stell of the Ingham County Circuit Court, the Fulkerson Proposal shall be given preclusive effect.

Most of the issues raised by plaintiffs were raised before Administrative Law Judge Fulkerson and the Supervisor of the Wells. The oil-water contact issue was litigated before A.L.J. Fulkerson and decided not to be unreasonable.[4] The porosity issue was also decided by A.L.J. Fulkerson in Sun Oil's favor.[5] The entire thrust of the Fulkerson Proposal is that the gas and oil net pay scheme devised by Sun Oil was adequate and reasonable. Further, the 60% current production/40% volumetrics participation was found to be reasonable.[6]

The fact that Sun Oil did not use a core analysis was considered to be of no consequence to A.L.J. Fulkerson.[7] The isopaching issue was found to be "a fair and equitable presentation of the value for oil of each tract when compared to the other tracts in the pool." [8] The planimetering error was found to be corrected, otherwise being insignificant.[9] Finally, A.L.J. Fulkerson definitively found that Sun Oil did not cement the 6–3 well and that Sun Oil would have nothing to gain from doing so.[10]

The last issue raised by plaintiffs, that defendants procured and provided geologists and other witnesses to falsely testify

---

**3.** *See* Plaintiffs' Resp. at para. 17.

**4.** Fulkerson Proposal at 19, 22.

**5.** *Id.* at 19.

**6.** *Id.* at 21–23. This issue arises from Dr. Joshi's Report at para. 1 (Pls.' Ex. B).

**7.** Fulkerson Proposal at 19. This issue also arises from Dr. Joshi's Report at para. 4 (Pls.' Ex. B).

**8.** Fulkerson Proposal at 20. This issue also arises from Dr. Joshi's Report at para. 5 (Pls.' Ex. B).

**9.** Fulkerson Proposal at 20. This issue also was brought up by Dr. Joshi in his report at para. 6 (Pls.' Ex. B).

**10.** Fulkerson Proposal at 14.

before the unitization hearing, is an issue to be brought before the Michigan Department of Natural Resources to collaterally attack the unitization order. As neither party is challenging that order, and as the Fulkerson Proposal, the Order of the Supervisor and its affirmance from Judge Stell are not being collaterally attacked, then the issue of perjury or its subornation is not before this court.

Because all of the allegations have been precluded or shown to be irrelevant to plaintiffs' case, defendants' motion for summary judgment on Count III of plaintiffs' complaint shall be granted.

C. Count IV—Fraudulent Inducement

In this count, plaintiffs essentially charge defendants with misrepresenting certain facts to their predecessors, other landowners and the Michigan Department of Natural Resources. Plaintiffs state that because of these misrepresentations, plaintiffs and/or their predecessors were induced to sign the unitization plan. Because the unitization plan was signed, plaintiffs allege that they were denied their fair share of the unitization production and lost out on royalty revenues due them.

Defendants indicate that plaintiffs' concerns with the unitization plan were addressed by the Fulkerson Proposal and are therefore barred by collateral estoppel. Defendants further state that they did not make any misrepresentations to the plaintiffs or any other individuals in privity with the plaintiffs. Additionally, defendants state that any representations, if made, were true. Finally, defendants assert that even if misrepresentations were made to plaintiffs or their predecessors in interest, no harm came to plaintiffs because of them.

■ This court agrees with defendants that plaintiffs have failed to carry their burden of production in this motion for summary judgment. Any assertion made by plaintiffs that challenges the fairness and validity of the unitization plan is estopped by reason of the Fulkerson Proposal as adopted by the Order of the Supervisor and affirmed by Judge Stell. *Storey*, 431 Mich. at 373 n. 3, 429 N.W.2d 169. Further, any claim that the defendants acted unreasonably in connection to the unitization plan after its implementation is precluded. *See supra* pp. 387–389.

In paragraph 31 of the amended complaint plaintiffs state that defendants advised them "that unitization would increase the overall royalties paid to Plaintiffs." Defendants assert that plaintiffs' own expert, Dr. Joshi, admits that unitization enhanced the total oil and gas recovered from the field.[11] Plaintiffs counter this allegation by stating that

the issue is not whether, in fact, without misrepresentations Plaintiffs would have received the revenues they did or received more had unitization not taken place, but whether, in fact, pursuant to the Unitization Order itself the tract participation formula which was utilized is accurate.

Plaintiffs' Resp. at para. 28. If the issue is whether the tract participation formula was accurate, then plaintiffs again are precluded, as this issue was decided in Sun Oil's favor by A.L.J. Fulkerson. Plaintiffs' predecessors in interest were present at the proceedings initiating the unitization plan, and plaintiffs are therefore bound by A.L.J. Fulkerson's proposal.

■ Plaintiffs have also failed to produce any evidence that shows that plaintiffs or their predecessors in interest relied upon any misrepresentations made by defendants. Defendants have affirmatively cited the deposition of plaintiff Edgar Dietrich, who acknowledges that no representations alleged in Count IV were made to him.[12] Edgar Dietrich also stated that he

---

**11.** Even assuming that plaintiffs' expert did not agree with the alleged representation that unitization would increase the overall royalties, this statement allegedly made by defendants could easily be read as a hope or opinion, not an assurance given by Sun Oil to plaintiffs. *See Wilson v. Kiss*, 751 F.Supp. 1249, 1255 (E.D.Mich.1990); *Connellan v. Himelhoch*, 506 F.Supp. 1290, 1296 (E.D.Mich.1981); *Schuler v. American Motors Sales Corp.*, 39 Mich.App. 276, 280, 197 N.W.2d 493 (1972).

**12.** Edgar Dietrich Dep. at 58, lines 16–19.

had no knowledge of any representation made to Helen Spalter [13] and that the alleged misrepresentations otherwise stated in Count IV were made to the Supervisor of Wells.[14] Plaintiffs do not offer any rebuttal evidence, either by deposition, affidavit or otherwise, except for the affidavit of Dr. Joshi, who conclusorily states that "[d]efendants clearly misrepresented the facts to the Dietrichs' predecessors to obtain their agreement to the Unitization." [15] Dr. Joshi's bald statement is hearsay at best and would not be presentable as expert testimony at trial. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Further, his statement is not significantly probative. *See id.* at 250, 106 S.Ct. at 2511.

Finally, defendants assert that plaintiffs will not and cannot prove damages arising out of the alleged misrepresentations contained in Count IV. Plaintiffs state that "the tract participation formula was not fair and appropriate under the factual circumstances...." [16] Once again, any contention that the tract participation formula was unfair or inaccurate or invalid is precluded by the Fulkerson Proposal and the order implementing the unitization plan. As plaintiffs and their predecessors in interest were present at both, plaintiffs are properly precluded from relitigating the same issues.

Because plaintiffs have failed to set forth specific evidence pointing to a genuine triable issue that plaintiffs or their predecessors in interest were fraudulently induced to agree to the unitization plan, or that plaintiffs were harmed by any alleged misrepresentations by defendants, summary judgment on Count IV is appropriate. *Gregg,* 801 F.2d at 861.

D. Count V—Fraudulent Production

In Count V, plaintiffs claim that between November 1984 and March 1985 defendants produced an additional 881,071 barrels of oil in the Columbus III oil field that had not previously been accounted for. Plaintiffs offer up certain Sun Oil records indicating that 881,071 barrels of oil were produced in this six-month period, but that plaintiffs and other landowners were not given any royalties. Defendants counter that this was a clerical error and offer the affidavit of Ms. Leerae Otto, Sun Oil's senior accounting assistant, and an interoffice memorandum to support their argument.

As both sides have documentation supporting their theories, there appears to be a genuine issue of material fact as to whether the 881,071 barrel count was a legitimate discrepancy and whether defendants owe plaintiffs royalties on this oil production. Because there is a genuine issue of material fact, summary judgment will be denied on Count V.

### ORDER

For the foregoing reasons, it is hereby ORDERED that defendants' motion for summary judgment is GRANTED on Counts I, III and IV of the amended complaint.

It is further ORDERED that defendants' motion for summary judgment is DENIED on Count V of the amended complaint. SO ORDERED.

---

13. *Id.* at 59, lines 18–20.

14. *Id.* at 56–60.

15. Joshi Aff. at para. 14.

16. Plaintiffs' Resp. at para. 30.