21 F.3d 427
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Edgar J. DIETRICH and Theresita Dietrich, Plaintiffs-Appellants,
v.
SUN EXPLORATION AND PRODUCTION COMPANY, a Delaware
corporation, and Sun Operating Limited
Partnership, Defendants-Appellees.
 Nos. 92-1981, 93-1442.
 United States Court of Appeals, Sixth Circuit.
 March 30, 1994.
 
 Before: MERRITT, Chief Judge; MILBURN and SILER, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 This action involves plaintiffs' royalty interests in tracts of land in the Columbus III oil field in St. Clair County, Michigan, which is leased to and operated by defendants. Plaintiffs sued, alleging in a five-count complaint various forms of misrepresentation and mismanagement of the field. After five and one-half years of discovery, the district court granted judgment for the defendants. Plaintiffs appeal the court's judgment on four counts of their complaint, and appeal the sanctions assessed against them for abusive litigation practices and under Rule 11. We affirm the judgment of the district court in all respects.
 
 I.
 
 2
 The factual basis for this action began in 1971, when the owners of tracts 1, 2, and 6 of the Columbus III oil field, the Koziaras, assigned overriding royalty interests in the tracts to the law firm of Dietrich & Schrauger. In 1972, the law firm assigned its interest to Helen Spalter, the mother of plaintiff Edgar Dietrich, for life remainder to Katherine Dietrich, Edgar Dietrich's daughter. On June 1, 1984, Katherine Dietrich reassigned her interest to plaintiffs.
 
 
 3
 Plaintiffs brought this action in Michigan state court in 1987, alleging that the defendant oil company had illegally drained oil from the field, had failed to compensate them for oil drained from the field, and had in other ways improperly managed the field. The defendants removed the case to federal court on diversity grounds, and plaintiffs subsequently filed an amended complaint alleging the following:
 
 
 4
 Count I: Defendants illegally drained 36,417.5 barrels of oil from the oil field in which the plaintiffs held an interest during the period from November 1, 1971 to June 30, 1974;
 
 
 5
 Count II: Defendants illegally overproduced oil from the field in addition to that alleged in Count I, in breach of their fiduciary duty to the plaintiffs;
 
 
 6
 Count III: Defendants negligently or intentionally breached their duty to plaintiffs by failing to use the care and skill of an ordinary oil producer, including underreporting oil reserves, sabotaging wells, and persuading witnesses to give false testimony at earlier administrative proceedings;
 
 
 7
 Count IV: Defendants fraudulently induced plaintiffs or their predecessors to sign a unitization agreement in 1974.
 
 
 8
 Count V: Defendants failed to compensate plaintiffs for 881,071 barrels of oil allegedly produced by defendants from November, 1984 to March, 1985.
 
 
 9
 Pursuant to defendants' first motion for summary judgment, the district court disposed of Count II in favor of the defendants. Plaintiffs do not contest that disposition here and consequently we do not address it. Defendants filed a subsequent motion for summary judgment, which the district court granted on Counts I, III and IV. See Dietrich v. Sun Exploration and Production Co., 784 F.Supp. 383 (E.D.Mich.1992). Plaintiffs pursued Count V until the day of trial, July 2, 1992, at which point they admitted that they were unable to factually substantiate the claim. The district court granted judgment as a matter of law in favor of the defendants on that count, and dismissed the entire action. Plaintiffs appeal the summary judgment disposition of Counts I, III and IV, which we address in Part II of this opinion. Plaintiffs also appeal the district court's judgment as a matter of law on Count V, which we take up in Part III of this opinion.
 
 
 10
 The district court also imposed two monetary sanctions against the plaintiffs during this litigation. In 1991, after the cause of action had been pending and discovery underway for almost four years, the district court assessed against the plaintiffs approximately $13,000 in reasonable costs and fees for abusive litigation practices. After dismissing the entire action in July of 1992, the court also imposed sanctions under Rule 11 for plaintiffs' pursuit of Count V, a factually unsubstantiated claim. Plaintiffs appeal both assessments, which we address in Part IV of this opinion.
 
 II.
 
 11
 The district court disposed of Counts I, III and IV on summary judgment in favor of defendants. We review summary judgments de novo, applying the same standard as that applied by the district court. The record must demonstrate that no genuine issue of material fact remains, reviewing the record and evidence in the light most favorable to the nonmoving party. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Niecko v. Emro Marketing Co., 973 F.2d 1296 (6th Cir.1992).
 
 A.
 
 12
 Plaintiffs allege in Count I that the defendants failed to compensate them for over 36,000 barrels of oil that defendants illegally drained from tracts 1, 2 and 6 of the Columbus III oil field between November 1, 1971 and June 30, 1974. Plaintiffs argue that the Michigan Court of Appeals decision in Wronski v. Sun Oil Co., 89 Mich.App. 11 (1979) ("Wronski I "), can be used offensively to collaterally estop the defendants from contesting the claim.
 
 
 13
 Wronski I began in April, 1975, when two parties with interests in the Columbus III field (the Koziaras the Wronskis) filed an action in Michigan state court, alleging that Sun Oil was overproducing the Columbus III field and converting oil in which they had an interest.[1] They requested recision of their leases with Sun Oil, or in the alternative, sought damages for the overproduction on their property. As part of its decision in favor of the plaintiffs in the case, the trial court found that Sun Oil had drained illegally 50,000 barrels of oil from the Columbus III field during the time period of February 1, 1970 to June 30, 1974. The Michigan Court of Appeals affirmed the findings and judgment for the plaintiffs. Wronski v. Sun Oil Co., 89 Mich.App. 11 (1979).
 
 
 14
 The district court found that Wronski I conclusively established that the defendants drained illegally 50,000 barrels of oil from the field during the period of February 1, 1970 to June 30, 1974. Plaintiffs, however, held their interest in the property only from November 1, 1971 to June 30, 1974, creating time and property interest discrepancies between the two cases. Consequently, the district court found that plaintiffs would be required to present proof in addition to the Wronski I opinion to establish whether any of (or what percentage of) the illegal drainage established by Wronski I had occurred during February 1, 1970 to June 30, 1974. Because the plaintiffs admitted that they had no additional evidence to substantiate the claim, the district court granted summary judgment in favor of defendants. Dietrich v. Sun Exploration and Production Co., 784 F.Supp. 383, 387 (E.D.Mich.1992).
 
 
 15
 Under Michigan's law of collateral estoppel,[2] if mutuality exists between the parties, a judgment is conclusive in subsequent litigation only "as to questions actually litigated and determined by the judgment. It is not conclusive as to questions which might have been but were not litigated in the original action." Howell v. Vito's Trucking and Excavating Co., 386 Mich. 37, 42 (1971) (quoting Restatement of the Law, Judgments, Sec. 68 at 293-94); Knoblauch v. Kenyon, 163 Mich.App. 712, 719-20 (1987). Assuming arguendo that mutuality exists, the district court was correct that plaintiffs cannot establish Count I solely through the use of offensive collateral estoppel. Wronski I is conclusive on the finding of the illegal drainage occurring between February 1, 1970 and June 30, 1974; but the parties did not litigate, and the judgment does not establish, the amount of oil drained illegally during November 1, 1971 and June 30, 1974. Wronski I also does not establish that a steady stream was pumped from the field, the percentage pumped during any subperiod of time within the relevant time frame, or the value of oil drained during any subperiod. Thus, Wronski I cannot be used as the plaintiffs' only evidence of the amount of oil drained from the property between November 1, 1971 and June 30, 1974.
 
 
 16
 Plaintiffs have failed to respond to the problem of lack of identity of issues actually litigated, continuing to argue on appeal that no additional evidence is necessary. Without such additional evidence, plaintiffs cannot prove Count I. Consequently, judgment in favor of the defendants on Count I is proper.
 
 B.
 
 17
 Count III alleges that defendants breached their duty of care as reasonable and prudent oil producers as required under Michigan law. Michigan-Wisconsin Pipeline Co. v. Michigan National Bank, 118 Mich.App. 74 (1984). The defendants argued and the district court found that plaintiff was collaterally estopped from litigating this claim by a series of Michigan state administrative and judicial decisions involving the same parties as Wronski I. The decisions stem from another lawsuit filed by the plaintiffs in Wronski I, the Koziaras and the Wronskis.
 
 
 18
 In 1975, the Wronskis and the Koziaras filed this second lawsuit against Sun Oil, seeking review of a unitization order of the oil field.[3] Orders were entered by the Supervisor of Wells approving the unitization plan for Sun Oil, allowing Sun Oil to manage the Columbus III field. After the state trial court denied a petition for review by the plaintiffs, the Michigan Court of Appeals remanded to an ALJ for a more detailed hearing and decision. Wronski v. Sun Oil Co., 108 Mich.App. 178 (1981) ("Wronski II" ). Administrative Law Judge William Fulkerson issued a Proposal for Decision on May 25, 1988 in favor of Sun Oil which was affirmed by the Supervisor of Wells and the Michigan state courts. Koziara v. Sun Oil Co., (Mich.Dep't.Nat.Resources May 25, 1988) (Fulkerson, A.L.J.) ("Fulkerson Proposal"), aff'd by Order of the Supervisor of Wells, Koziara v. Sun Oil Co., No. (A) 1-5-73 REMAND (Mich.Dep't Nat.Resources March 22, 1989) ("Order of the Supervisor"), aff'd sub nom. Wronski v. Sun Exploration and Prod. Co., No. 79-22915-AA (Ingham Cir.Ct. June 12, 1991) (Stell, J.).
 
 
 19
 Count III specifically alleges that the defendants incorrectly interpreted geological and reservoir data, failed to represent plaintiffs' interests adequately before the Michigan Department of Natural Resources at the 1974 unitization hearings, under-reported oil and gas reserves, sabotaged a well ("the 6-3 well") with cement, and persuaded geologists and other witnesses to give false testimony at the unitization hearings. On summary judgment, plaintiffs offered the affidavit and report of Dr. Joshi, a petroleum engineer, who concluded after reviewing all of the data surrounding the unitization process, that defendants' actions "can in no way be stated to [be] at a level of a prudent operator." (J.A. at 65). Plaintiffs argue that Dr. Joshi's report and opinions create genuine issues of material fact which make summary judgment improper.
 
 
 20
 The district court found that plaintiffs were collaterally estopped by the Fulkerson Proposal, the Order of the Supervisor and Wronski II from raising these claims. The court found that these decisions, primarily the Fulkerson Proposal, addressed all claims raised by plaintiffs in Count III, thereby collaterally estopping plaintiffs from relitigating them in the instant case. Dietrich, 784 F.Supp. at 388-89.
 
 
 21
 Defensive collateral estoppel applies to administrative determinations where a method of appeal is provided and the decision is final in the absence of an appeal. Nummer v. Dep't. of Treasury, 200 Mich.App. 695, 698 (1993). In this case, the Fulkerson Proposal comports with these procedural requirements: a method of appeal was provided through the Supervisor of Wells and the Michigan courts. Such appeal was taken, and the ALJ's decision was affirmed by the state courts. The Fulkerson Proposal is therefore preclusive as long as the other requirements of collateral estoppel are met.
 
 
 22
 As explained above in Part II.A. of this opinion, collateral estoppel may only be asserted if mutuality between the parties is established. Mutuality involves a determination of whether the litigants were parties or privy to a party in the former action.[4] Sun Oil and its predecessors were parties to the administrative proceedings and Wronski II, but the plaintiffs, the Dietrichs, were not. However, the Dietrichs were given notice of and the opportunity to formally participate in the administrative proceedings, attended all of the hearings (Edgar Dietrich was a lawyer for the plaintiffs), and actually participated through Dietrich in the hearings. The Dietrichs' interests were identical to the interests of the named plaintiffs, and the Dietrichs had ample opportunity through Edgar Dietrich's participation to assert and protect those interests. Although mutuality may not be strictly fulfilled here, Michigan allows a more liberal use of defensive estoppel in cases such as this, where the standards under which the litigation will take place are identical and where the parties have had their interests heard and protected in the first litigation. See, e.g., Alterman v. Provizer, 195 Mich.App. 422, 425 (1992). We therefore find that the Fulkerson Proposal is preclusive in this action.
 
 
 23
 We agree with the district court that the Fulkerson Proposal addressed and decided all of the claims made by the plaintiffs in Count III. First, plaintiffs assert that the defendants misinterpreted geological and reservoir data during the unitization process. The Fulkerson Proposal found to the contrary. It found the gas/oil ratio tests reliable, the production figures proper, the use of porosity acre feet determinations proper; the core analysis a proper method to determine porosity feet; the gas/oil contact and average porosity determinations accurate; and the net oil pay column reasonable. (Fulkerson Proposal at 7-16). Second, plaintiffs assert that defendants failed to represent their interests adequately at the 1974 unitization proceedings. The Proposal found that Sun Oil reasonably construed the data and fairly and equitably determined the participation factors and formulas, the primary issue at the unitization hearings. The Proposal also found that Sun Oil had acted in a completely professional manner throughout the hearings. (Proposal at 21-23A). Third, plaintiffs assert that Sun Oil underreported oil and gas reserves. To the contrary, the Proposal found that a fair and equitable representation of the oil and gas reserves had been provided by Sun Oil. (Proposal at 20). Fourth, plaintiffs assert that Sun Oil had sabotaged wells with cement. The Proposal found that the wells had not been sabotaged with cement, but rather had been treated with standard materials used in "lost circulation zones." The ALJ found that the scientific data indicated that the materials could not have been cement, and that plaintiffs assertion was not credible, given Sun Oil's interest in the wells. Fifth, plaintiffs assert that defendants withheld information on a well (the "6-3 well"). Again, the Fulkerson Proposal states that "Every aspect of the 6-3 well was examined in great detail." It also notes that plaintiffs seem to be asserting that the information was withheld during the unitization process, yet the 6-3 well did not even exist at the time of unitization. (Proposal at 11). Finally, plaintiffs assert that defendants convinced expert witnesses adverse to the plaintiffs to lie at the unitization hearings. The ALJ disagreed, finding that the defendant approached the unitization process in a totally professional manner. (Proposal at 23A).
 
 
 24
 Given that all aspects of Count III were carefully addressed and conclusively determined by the Fulkerson Proposal, plaintiffs are collaterally estopped from litigating the claims in Count III, and summary judgment in favor of the defendants is proper.
 
 C.
 
 25
 In Count IV, plaintiffs allege that defendants' misrepresentation of geological and reservoir data to the Michigan Department of Natural Resources induced plaintiffs and/or their predecessors to sign the 1974 unitization plan, thereby denying them their fair share of the unitization production. In effect, plaintiffs challenge the fairness and validity of the 1974 unitization plan. Plaintiffs rely on statements and conclusions in Dr. Joshi's affidavit to create material issues of fact. The district court found this claim collaterally estopped by the Fulkerson Proposal and granted summary judgment. Dietrich, 784 F.Supp. at 389.
 
 
 26
 As in Count III, plaintiffs are collaterally estopped by the Fulkerson Proposal. The ALJ resolved in favor of the defendants all contentions regarding the fairness and validity of the unitization proceeding and defendants' involvement in the process. Therefore, whether or not Dr. Joshi agrees with the ALJ's conclusions, plaintiffs cannot challenge them in this proceeding. Summary judgment in favor of the defendants on Count IV is proper.
 
 III.
 
 27
 After the district court disposed of the first four counts on summary judgment, Count V remained to be tried. Count V alleged that between November, 1984 and March, 1985, defendants produced an additional 881,071 barrels of oil from the field that had not been reported previously, and plaintiffs and other owners were not paid royalties on this oil. In April, 1992, the court set the trial date for July 2, 1992 and issued the Final Pretrial Order. The Order, drafted and approved by the plaintiffs, directed that all motions in limine be filed at least one week prior to trial. The Order also clarified the issue of fact to be litigated: "Did Defendants remove oil from the Columbus III field between November, 1984 and March, 1985, which was not properly accounted for?"
 
 
 28
 On July 1, 1992, the day before trial, plaintiffs filed two motions in limine. Both were denied as untimely and on the merits by the court. The next day, the first day of trial, plaintiffs conceded that without successful motions in limine, they were unable to factually prove Count V. On that basis, the district court granted defendants' motion for judgment as a matter of law on Count V and dismissed the case. Plaintiffs argue on appeal that the district court erred in denying their two motions in limine, and that judgment on Count V is premised on these erroneous rulings. In Parts A and B below, we address the court's decisions on the motions, and in Part C we address the district court's judgment as a matter of law on Count V.
 
 A.
 
 29
 The first of plaintiffs' motions was a request to clarify or amend the Final Pretrial Order ("the Order") to allow proof regarding production of oil by defendants outside the time period specified in Count V and in the Order. Specifically, plaintiffs requested that they be allowed to admit proof going back to the mid-1970s, although the complaint alleged overproduction only between November, 1984 and March, 1985. The district court denied this motion as untimely since it was not filed within the time limits set by the Order. On the merits, the court found that plaintiffs could only have intended this motion as a surprise or delay tactic. The action had been pending for nearly five and one-half years, and the court found it entirely unreasonable to expect the defendants to defend what would essentially be a new claim raised on the day before trial. On appeal, plaintiffs argue that justice required the court to amend or clarify the Order.
 
 
 30
 We disagree with the plaintiffs and affirm the district court. First, the motion was untimely, especially in light of the extreme nature of the request. Second, the plaintiffs agreed to and signed the Order; thus, there is no basis upon which to argue at trial that it was not clear, that it required amendment, that it trapped them into a situation of being unable to prove their claim, or that the plaintiffs in good faith could have believed they would freely be allowed to amend the Order. The district court did not abuse its discretion in refusing to allow the plaintiffs to raise an essentially new claim one day before trial. We affirm the denial of this motion in limine.
 
 B.
 
 31
 The second motion requested introduction of the Wronski I court of appeals and trial court opinions for purposes of impeachment and absence of mistake. Plaintiffs argued that the decisions established that the defendants had illegally drained oil in the early 1970's, and therefore would show that they knew they were again illegally producing oil during the time period in question. The district court denied the motion as untimely. It also addressed the merits of the motion, ruling that in effect this was a motion for reconsideration because it had already limited the use of Wronski I to issues not involved in Count V. See Dietrich v. Sun Exploration and Prod. Co., 784 F.Supp. 383 (E.D.Mich.1992). Finally, the court found that the Wronski I decisions factually were limited to issues not relevant to Count V. On those bases, the district court denied the motion in limine. On appeal, plaintiffs argue that this ruling was error.
 
 
 32
 We agree with the district court's denial of this motion. First, the motion is untimely. It would be unreasonable to expect the defendants to defend the claim with only a one-day notice of the change in expected proof after relying on the court's previous rulings to prepare for trial. Second, the district court ruled on this issue in Dietrich, 784 F.Supp. at 387, stating that the use of Wronski I was strictly limited to the time and property interest questions at issue in Count I. Finally, the time frames involved in Wronski I and Count V are completely different, and based on the first motion discussed above, the court had determined that the proof would be strictly limited to the time period at issue in Count V. In sum, we do not believe that it was an abuse of the court's discretion to limit the proof in this regard and therefore affirm the district court's denial of this motion in limine.
 
 C.
 
 33
 Upon the district court's denial of plaintiffs' motion to clarify or amend the pretrial order, plaintiffs requested an adjournment, admitting that they were unprepared to try the case without the granting of the motion. When the district court denied the motion to adjourn,[5] plaintiffs admitted they were unable to factually substantiate Count V. On that basis, the district court granted defendants' motion for judgment as a matter of law.
 
 
 34
 Plaintiffs' admission of being unable to prove the claim together with the correct rulings of the district court on plaintiffs' last-minute motions in limine wholly support the district court's judgment. We therefore affirm the judgment as a matter of law in favor of defendants on Count V.
 
 IV.
 
 35
 The district court imposed two sanctions against plaintiffs during this litigation. In 1991, prior to the disposition of the first four counts on summary judgment, the district court imposed approximately $13,000 in sanctions for abusive litigation practices. The second sanction, imposed under Rule 11 against the plaintiffs and plaintiffs' counsel, was ordered by the court after the entire case was dismissed for pursuit of a factually unsubstantiated claim (Count V). Plaintiffs appeal both sanctions, and we address them below.
 
 A.
 
 36
 After the filing of this lawsuit in 1987, discovery proceeded over the next two years. In 1989, defendants filed a motion to dismiss under Fed.R.Civ.P. 37 for failure to comply with discovery, under Rule 16 for failure to comply with a court order and under Rule 41 for failure to prosecute. Defendants also requested costs and reasonable attorneys fees. The court referred the motion to a Magistrate, who held two hearings on the matter and issue a detailed, comprehensive Report and Recommendation ("R & R") (J.A. at 146). The district court accepted the R & R, which recommended the imposition of monetary sanctions short of dismissal for abusive litigation practices. Specifically, the court ordered that the plaintiffs pay $12,973.35 for reasonable attorney fees and other reasonable expenses incurred by defendants as a result of plaintiffs' neglect and misconduct during discovery.
 
 
 37
 On appeal, plaintiffs contend that the district court erred in accepting the R & R because the court's reasons for imposing the sanctions were beyond their control. Plaintiffs also argue that the district court had no authority to impose these sanctions. As explained below, the sanctions imposed were well within the authority and reasonable discretion of the district court and enjoy ample support in the record.
 
 
 38
 Rules 37(b)(2) and 37(d) of the Federal Rules of Civil Procedure provide authority to the district courts to impose sanctions, including monetary sanctions, for unjustified noncompliance with discovery orders or rules. These orders need not be in writing to be the basis for discovery sanctions. See, e.g., Penthouse Int'l Ltd. v. Playboy Enterprise Inc., 663 F.2d 371, 386-88 (2d Cir.1981). The court also has broad, well-recognized inherent authority to protect the administration of trials by levying sanctions in response to abusive litigation practices. Id. at 386 (citing Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980)); see also Link v. Wabash R.R. Co., 370 U.S. 626 (1962). Consequently, the district court in the instant case clearly had the authority to impose these sanctions.
 
 
 39
 The record also supports the decision to impose sanctions. The R & R detailed plaintiffs' repeated failures to comply with discovery orders of the court, failures to answer interrogatories, repeated requests for extensions for responding to discovery requests, failure to appear at scheduled court conferences, failure to produce their expert witness for a deposition by the deadline set by the court, and at least two requests that the trial date be changed (the action had been set for trial 13 times). In fact, in a later order of the district court on another sanctions issue, the court described plaintiffs' conduct as "inordinate and unjustifiable interferences with and obstruction of the exercise of [defendants'] discovery rights." (J.A. at 367-68). These examples illustrate the extreme and ongoing nature of abuses by plaintiffs, and support the court's decision to impose sanctions. We find no error in the imposition of sanctions for abuse of discovery, and therefore affirm.
 
 B.
 
 40
 On August 7, 1992, one month after the district court dismissed the case, defendants filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, alleging that plaintiffs pursued Count V with full knowledge that they were unable to prove the claim. After entertaining plaintiffs' response to the motion, the court imposed Rule 11 sanctions on the grounds that the plaintiffs had pursued a factually unsubstantiated claim. The court ordered the defendants to supply affidavits outlining reasonable costs and fees incurred as a result of plaintiffs' misconduct. On February 26, 1993, upon review of the materials submitted and review of plaintiffs' objections, the court ordered that "plaintiffs and plaintiffs' counsel shall pay to defendants in equal share the sum of $19,735.00...."
 
 
 41
 Plaintiffs argue on appeal that the court cannot impose Rule 11 sanctions when the complaint was originally filed in state court and later removed to federal court. This argument is without merit. In Mann v. G & G Mfg. Inc., 900 F.2d 953 (6th Cir.), cert. denied sub nom., Sloan v. G & G Mfg. Inc., 498 U.S. 959 (1990), the court held that after a complaint is filed, attorneys have a "continuing responsibility to review their pleadings, and if necessary, to modify them to conform with Rule 11." Id. at 959. "Failure to do so permits the district court, within its discretion, to impose sanctions against the offending litigant or attorney when a reasonable inquiry would have disclosed that the complaint was either lacking in factual support or unwarranted by existing law." Id. (citing Herron v. Jupiter Transportation Co., 858 F.2d 332, 336 (6th Cir.1988)). Plaintiffs filed an amended complaint in federal court, and were under the continuing responsibility explained in Mann to review and modify their pleadings in accordance with Rule 11.
 
 
 42
 Plaintiffs next argue that the district court abused its discretion when it found plaintiffs' actions objectively unreasonable and deserving of Rule 11 sanctions. They argue that only a technical defect in Count V prohibited them from prosecuting the claim,[6] and that they objectively and in good faith believed that they would be allowed to amend the pleading on the day before trial. Plaintiffs produce no evidence that they did not know of or should not have been required to discover the problem in the complaint sooner. In fact, the record clearly reflects that they did know of the time discrepancies during the final pretrial conference three months before trial. At the conference, the court refused to allow plaintiffs to alter the substance of Count V, specifically stating in the Final Pretrial Order that the dates would be restricted to those in the complaint. As such, this was not a "technical defect" of which plaintiffs were unaware. Plaintiffs have established absolutely no abuse of discretion on the part of the district court in imposing these sanctions. In fact, the record reflects that this is exactly the type of case for which Rule 11 sanctions are appropriate.
 
 
 43
 The court assessed $19,735 in Rule 11 sanctions based on plaintiffs conduct from February, 1992 (when all counts except Count V were dismissed) until July 2, 1992 (the day of trial). Plaintiffs argue on appeal that the amount of sanctions should be based only on the costs incurred immediately before trial or just for the first day of trial.
 
 
 44
 The district court found that Count V was factually unsubstantiated and that plaintiffs had pursued the claim despite knowledge of this problem. Thus, defendants incurred unnecessary costs and fees starting in February, 1992, when they were preparing solely for trial on Count V. Further, the court inquired extensively into the basis and reasonableness of any sanctions, twice striking the affidavits of defendants and ordering to submit more specific statements of their incurred costs. The court allowed plaintiffs ample opportunity to file objections to all submissions by the defendants. In sum, the record amply supports the district court's decision; it did not abuse its discretion in setting the amount of sanctions.
 
 
 45
 The Rule 11 sanctions were entered against plaintiffs and plaintiffs' counsel in equal amounts. Plaintiffs' counsel argues that the district court erred in imposing sanctions against him because the defendants did not request such a sanction and he did not have notice to oppose the sanctions against himself. Defendants assert on appeal that we are without jurisdiction to review counsel's argument because counsel was not named in the notice of appeal as a party intending to appeal.
 
 
 46
 The notice of appeal states: "Notice is hereby given that, EDGAR J. DIETRICH and THERESITA DIETRICH, Plaintiffs in the above entitled matter hereby appeal...." The caption refers only to the plaintiffs; nowhere does it refer to counsel as a plaintiff in the case or on appeal. Failure to name a party in the notice of appeal, as required by F.R.A.P. 3(c), "constitutes a failure of that party to appeal." Torres v. Oakland Scavenger Co., 487 U.S. 312, 314 (1988). The Supreme Court in Torres enunciated a strict, unyielding interpretation of Rule 3(c) which stripped the lower courts of discretion to waive technical requirements. Under Torres, it is clear that we would not have jurisdiction to review counsel's appeal.
 
 
 47
 Since Torres, Rule 3(c) has been amended to prevent appeals from being destroyed by some technical defects. For example, the Rule states that an appeal should not be dismissed "for failure to name [in the notice] a party whose intent to appeal is otherwise clear from the notice." Thus, when a notice of appeal specifies "all plaintiffs" or "the plaintiffs A, B, et al.,", the appeal should not be dismissed since it is objectively clear who the parties are that intend to appeal. In this case, however, it is not objectively clear that counsel intended to appeal. The notice specifically names only the two plaintiffs, the caption nowhere refers to counsel, and counsel is described below the caption only as "Attorney for Plaintiffs." This notice contains no objective indication, or even an ambiguity, that we may interpret as including plaintiffs' counsel. Under Rule 3(c) and Torres, we are without jurisdiction to entertain this portion of the appeal. See also F.T.C. v. Amy Travel Service, Inc., 875 F.2d 564 (7th Cir.), cert. denied, 493 U.S. 954 (1989).
 
 V.
 
 48
 In sum, summary judgment in favor of the defendants is proper on Counts I, III and IV. The district court also correctly granted judgment as a matter of law in favor of the defendants on Count V. Finally, we find no error in the court's imposition of sanctions for abusive litigation practices and under Rule 11. The district court's judgment is AFFIRMED in all respects.
 
 
 
 [1]
 At the time of the overproduction, a proration order was in effect which limited the production of oil from the field
 
 
 [2]
 Because we are sitting in diversity and are considering the effect of a prior Michigan state court judgment, Michigan law controls the law of collateral estoppel. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Amoco Prod. Co. v. Heimann, 904 F.2d 1405, 1415 n. 10 (10th Cir.1990), cert. denied, 498 U.S. 942 (1990)
 
 
 [3]
 In March, 1973, Sun Oil requested that the Columbus III field be unitized, a process which permits an entire field to be operated as a single entity without regard to surface boundaries. The owners of property within drilling range are awarded a royalty interest in the whole of what is produced
 
 
 [4]
 A privy is one who, after rendition of a judgment, has acquired an interest in the property or subject matter affected by the judgment through or under one of the parties. Howell, 386 Mich. at 43
 
 
 [5]
 The district court explained that it denied the motion to adjourn because trial briefs had been filed, a jury had been chosen, and the court's docket had been cleared for the trial. Given the request was on the first day of trial, after the case had been filed over 5 1/2 years before, the court found that it would be patently unfair to the jurors, defense and the court to adjourn
 
 
 [6]
 The technical defect to which plaintiffs refer is the time period set forth in Count V. In the amended complaint, plaintiffs alleged that the defendants had removed improperly oil from the field between November, 1984 and March, 1985. During the final pretrial conference, plaintiffs requested that an amendment to the complaint be allowed in order to expand that time period to begin in 1974. The court refused, and stated affirmatively that the only time period to be litigated would include November, 1984 to March, 1985